IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ABDULRAHMAN KANU,
                        Plaintiff,

        v.                                                Case No.: 1:21-cv-1333 (MSN/JFA)

MERRICK GARLAND, Attorney General,
United States Department of Justice, *et al.*,
                        Defendants.

## **MEMORANDUM OPINION**

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 29). Upon consideration of the motion and for the reasons set forth below, the Court grants the Motion for Summary Judgment.

## I.        PROCEDURAL HISTORY

On November 30, 2021, Plaintiff Abdulrahman Kanu filed a complaint appealing the denial of his naturalization petition. *See generally* (Dkt. No. 1) (Compl.). Although Kanu served the summons and Complaint on the federal officials named as defendants as well as the Attorney General of the United States, he failed to serve the United States Attorney's Office for the Eastern District of Virginia, as required under Federal Rule of Civil Procedure 4(i). *See* (Dkt. No. 18). The Court directed Kanu to cure this deficiency, and after doing so, the Defendants filed an Answer on July 15, 2022. (Dkt. No. 24). On October 21, 2022, Defendants filed a Motion for Summary Judgment. (Dkt. No. 29) ("Mot." or "Motion"); *see also* (Dkt. No. 30) ("Def. Mem."). Kanu filed a response to the Motion (Dkt. No. 34) ("Opp."), and Defendants filed a Reply in support of their Motion (Dkt. No. 37). The Court is satisfied that oral argument would not aid in the decisional process. Accordingly, this matter is ripe for resolution.

## II.     STATEMENT OF UNDISPUTED FACTS

Local Rule 56 requires a party responding to a summary judgment motion to "include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute." Local R. 56(B). Kanu has failed to comply with this requirement, as his Opposition does not include a section listing the material facts he contends are disputed. Under the Local Rules, the "Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id.*; *see also Apedjinou v. Inova Health Care Servs.*, No. 1:18-cv-00287, 2018 WL 11269174, at *1 (E.D. Va. Dec. 19, 2018) ("The nonmovant's failure to respond to a fact listed by the movant or to cite to admissible record evidence constitutes an admission that the fact is undisputed."); *Cincinnati Ins. Co. v. Am. Glass Indus.*, No. 1:07-cv-1133, 2008 WL 4642228, at *1 (E.D. Va. Oct. 15, 2008) ("[T]he Court assumes that facts alleged in the motion for summary judgment are admitted unless controverted by the responding opposition brief.") (internal quotations omitted).  In his Opposition, however, Kanu specifically identifies two paragraphs in Defendants' Statement of Undisputed Facts that he purports to dispute.  This Court will therefore find that the remainder of the material facts are admitted. Accordingly, the following facts are uncontested except where noted.

Kanu is a citizen of Sierra Leone. (Dkt. No. 30, Statement of Undisputed Facts ("SOF") ¶ 1). He is the father of five children—born in 2006, 2008, 2009 (one in July and one in September), and 2010, with four different women. *Id.* ¶ 2; *see also* AR21-24.[1] In March 2009, Kanu submitted an electronic entry for the Diversity Immigration Visa Program. SOF ¶ 3. He did

---

[1]      "AR" refers to the Administrative Record filed at Docket Numbers 25, 26.

not list any children on the Electronic Diversity Entry Form ("eDV Form"). *Id.* In November 2009,

Kanu completed a DS-230 Visa Application, Application for Immigrant Visa and Alien

Registration ("DS-230 Application"). *Id.* ¶ 4. One section of the DS-230 Application required

those completing the form to "List Names, Dates and Place of Birth, and Addresses of ALL

Children." *Id.*; *see also* AR434. In response to this question, Kanu wrote "N/A." SOF ¶ 4; AR434.

Plaintiff has stated that he completed the DS-230 form himself. SOF ¶ 4. On April 28, 2010, Kanu

was interviewed by a consular official in Sierra Leone during which he swore that all statements

on his DS-230 Application "are true and complete to the best of my knowledge and belief." SOF

¶ 5; AR436.[2] Kanu's DS-230 Application was granted, and on July 17, 2010, he was permitted to

enter the United States as a lawful permanent resident. SOF ¶ 6.

On August 30, 2018, Kanu submitted Form N-400, Application for Naturalization ("N-400

Application") to the United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 7. Kanu

listed five children on his N-400 Application. *Id.*; AR 127–29, 140. On the N-400 Application,

Kanu also checked "No" in response to questions asking if he had (1) "ever given any U.S.

Government officials any information or documentation that was false, fraudulent, or misleading";

and (2) "ever lied to any U.S. Government official to gain entry or admission into the United States

or to gain immigration benefits while in the United States." SOF ¶ 7; AR133.[3] During his N-400

---

[2]     Defendants state in their Statement of Undisputed Facts that "[t]he consular official did not discover that [Kanu] had omitted his children on both the eDV and DS-230." SOF ¶ 5. Kanu argues that this statement is "at best misleading," Opp. at 2, but offers only a reframing of the issue without contesting the veracity of the statement of fact at issue. *Id.* ("The relevant question is: did the consular officer not see the answer given as N/A with regards to the requirement to list all the names and dates of birth of the children or did the officer choose to ignore or not to address the answer as the Petitioner explained that the consular officer did not ask him any questions about his children?"). Accordingly, the Court finds that Kanu has not properly disputed this statement of fact and deems it admitted.

[3]     Although Kanu specifically discusses this particular paragraph in his Opposition, he does not contest that he so answered as Defendants allege. Opp. at 4. Nor could he credibly argue that given the record. Rather, Kanu only argues that the answers he gave were "the honest truth." *Id.* Because Kanu does not argue that he in fact answered those questions differently on his N-400 Application, the Court finds that there is no genuine dispute as to this material fact.

naturalization interview on March 18, 2019, Kanu stated under oath that he had not disclosed his children on either the eDV Form or DS-230 Application because he "was not married" at that time, "did not understand how the process work[ed]," and the consular office "never asked . . . about [his] kids." SOF ¶ 8; AR55. On June 1, 2020, USCIS denied Kanu's N-400 Application. SOF ¶ 9. The USCIS concluded that Kanu's answer of "N/A" on the DS-230 Application indicated that he had no children. *Id.*; AR305. The USCIS also concluded that "[t]he information on [Kanu's] Form DS-230 was not complete and true as attested to . . . [b]ecause [he] misrepresented the number of eligible children on [his] application [and he] cut off a material line of questioning not only to assess [his] admissibility but to establish whether or not [Kanu] warranted a favorable grant of discretion." AR306; *see also* SOF ¶ 9.

Appealing the denial, Kanu filed a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings. SOF ¶ 10. Kanu then submitted a signed and sworn declaration stating that the response of "N/A" to the DS-230 Application question asking him to list all children was intended to indicate "that information about any children he might have was not available at that time." *Id.*; AR243. Kanu stated in the declaration that "[t]here were rumors that he could be the father of a child or children, but those were only rumors and were not sufficient or persuasive enough for him to claim to be the biological father of any child or children at the DS-230 interview." SOF ¶ 10; AR244.

On April 27, 2021, Kanu provided an interview under oath during which he testified that at the time he completed his eDV Form in March 2009, he had two children, born in 2006 and 2008. SOF ¶ 11; AR395. He also testified that by the time he interviewed for his DS-230 Application in April 2010, he had two more children, born in July and September of 2009. SOF ¶ 11; AR395. Kanu testified that at the time of his lottery entry and then later at his DS-230

interview, however, he did not know he had any children.  SOF ¶ 11.  Kanu's fifth child was born

in November 2010, seven months after his April 2010 consular interview.  SOF ¶ 11. During the

April 2021 interview, Kanu provided the below explanations for his purported lack of knowledge

of each of his children:

- As to the eldest of Kanu's children, born in April 2006, Kanu testified that he dated

  the child's mother for "a couple of months," and saw her every day during that

  period, but "[t]hen she disappeared," and he did not see her again until some time

  between April and July 2010. He testified that when they were together, he was

  under the impression they were monogamous.  Kanu claimed he first learned of

  their child together when in 2010, the child's mother "suddenly reappeared" and

  told Kanu's mother that he was the father.  SOF ¶ 11.

- As to his next child, born in August 2008, Kanu testified he dated the child's mother

  for "about a year or two" in "perhaps 2006 and 07," while also describing her as

  his fiancé.  He testified that he did not see her every day, and when he saw her, she

  never looked pregnant, and never told him she was pregnant.  He testified there was

  no reason to doubt the child was his, although he did not learn of this child's birth

  until he was already in the United States, in 2010.  Like his first child's mother, his

  second child's mother went to Kanu's mother with the child's birth certificate.  SOF

  ¶ 11.

- As to Kanu's two children born in 2009 (July and September), Kanu testified he

  dated each child's mother for about one year, and saw each woman about once a

week, but never noticed they were pregnant, and neither woman told him about her

pregnancy.  He learned of the children after he came to the United States.  SOF ¶ 11.

- Kanu's fifth child was born in November 2010, seven months after his April 2010

    interview.  He testified that he was dating the child's mother at the time of his April

    2010 interview, but was not aware of the pregnancy, and did not learn about the

    child until after he came to the United States. SOF ¶ 11.

On August 2, 2021, USCIS reaffirmed its decision to deny Kanu's N-400 Application. *Id.* ¶ 12.

USCIS found that Kanu failed to show that he had no knowledge of his children at the time of his

admission as a lawful permanent resident, and thus his omission of this information was

disqualifying. *Id.*

On November 30, 2021, Kanu filed his Complaint in this action. (Dkt. No. 1).

## III.   LEGAL STANDARD

Summary judgment is proper where, viewing the facts in a light most favorable to the non-

moving party, there remains no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Evans v. Tech. Apps. & Servs. Co.*, 80 F.3d 954,

958–59 (4th Cir. 1996). "A material fact is one 'that might affect the outcome of the suit under the

governing law.'" *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (citing

*Anderson*, 477 U.S. at 248). The movant bears the initial burden of demonstrating an absence of a

genuine issue of material fact. *Celotex Corp. v. Carrett*, 477 U.S. 317, 327 (1986). If the movant

has met that burden, the non-moving party must demonstrate that such an issue of fact exists.

*Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A party opposing

. . . summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but

rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v.*

*Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The court examines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–53. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48.

The Immigration and Nationality Act ("INA") provides for judicial review of the denial of a naturalization application by USCIS. 8 U.S.C. § 1421(c). Courts review naturalization denials de novo, *Dung Phan v. Holder*, 667 F.3d 448, 451 (4th Cir. 2012), and such review is "'not limited to any administrative record, but rather may be on facts established in and found by the district court,'" *Nesari v. Taylor*, 806 F. Supp. 2d 848, 860 (E.D. Va. 2011) (quoting *Chan v. Gantner*, 464 F.3d 289, 291 (2d Cir. 2006)). An applicant who seeks United States citizenship "bears the burden of proof to establish that he or she is eligible for naturalization." *Nesari*, 806 F. Supp. 2d at 860.

## IV.   ANALYSIS

To qualify for naturalization, an applicant must establish, *inter alia*, that he (1) was "lawfully admitted for permanent residence," and (2) "is a person of good moral character." 8 U.S.C. §§ 1427(a); *see Injeti v. U.S. Citizenship & Immigration Servs.*, 737 F.3d 311, 315 (4th Cir. 2013). Defendants have moved for summary judgment on grounds that Kanu cannot meet his burden to demonstrate that he satisfies either of these requirements.

### A.   Lawfully Admitted for Permanent Residence

To be eligible for naturalization, an applicant must demonstrate he was "lawfully admitted for permanent residence." *Injeti*, 737 F.3d at 315 (quoting 8 U.S.C. § 1427(a)). The INA defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the

privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws." 8 U.S.C. § 1101(a)(20). "'[L]awfully' 'denotes compliance with substantive legal requirements, not mere procedural regularity.'" *Injeti*, 737 F.3d at 315 (quoting *In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003)). Indeed, the Fourth Circuit has held that to establish that a non-citizen was lawfully admitted for permanent residence, one "must . . . demonstrate that the grant of [permanent residence] status was in 'substantive compliance with the immigration laws.'" *Id.* (quoting *Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010)). As such, a non-citizen who was granted with lawful permanent residence status "who was otherwise not entitled to it . . . has not been lawfully admitted." *Id.* at 316.

In *Injeti*, the Fourth Circuit considered the appeal of a non-citizen's denial of an application for naturalization. *Id.* at 312. The plaintiff in *Injeti* omitted a previous marriage on her application for adjustment to legal permanent resident ("LPR") status and application for naturalization, but argued that because she was not inadmissible under the various statutory bars set forth in 8 U.S.C. § 1182(a), her admission was consistent with the applicable law and she was legally entitled to LPR status.[4] 737 F.3d at 313, 317–18. The Fourth Circuit rejected that argument, explaining that "[a]dmissibility is a necessary, but not sufficient condition for adjustment to LPR status." *Id.* at 318 (plaintiff's argument "incorrectly presumes that admissibility is the *only* requirement for being entitled to LPR status"). "[W]hile the statute governing adjustment of status makes admissibility a prerequisite for receiving a grant of LPR status . . . the ultimate determination as to whether an alien will receive that status is left to the Attorney General 'in his discretion and *under such*

---

[4] One of the statutory bars that the plaintiff in *Injeti* argued did not apply was 8 U.S.C. § 1182(a)(6)(C)(i), which designates a person inadmissible who seeks to procure admission "by fraud or willfully misrepresenting a material fact." 737 F.3d at 317. Defendants makes a similar argument here. Def. Mem. at 25 n.10. Because the Court affirms the denial of naturalization on other grounds, it does not reach this (or the other) grounds for summary judgment advanced by Defendants.

*regulations as he may prescribe*.'" *Id.* (quoting 8 U.S.C. § 1255). One of these regulations—8 C.F.R. § 103.2(a)(2)—requires an applicant to certify that all information contained in his application is "true and correct." The Fourth Circuit reasoned that "[b]ecause Injeti's application contained a material misrepresentation"—the omission of a previous marriage—"and was therefore not 'true and correct,' it did not comply with § 103.2(1)(2)." 737 F.3d at 318. The plaintiff in *Injeti* therefore failed to satisfy the requirements for adjustment to LPR status as set forth under 8 U.S.C. § 1255, "regardless of whether the misrepresentation on [the] application was willful . . . ." *Id.* Here, Kanu made a misrepresentation on his DS-230 Application when he certified that all of his answers on his DS-230 Application were "true and correct," as required under 8 C.F.R. § 103.2(a)(2) even though he had omitted his children from the DS-230 Application. *See* SOF ¶ 5; AR436.

Under *Injeti*, such a misrepresentation must be material in order for Kanu to have violated 8 C.F.R. § 103.2(a)(2). 737 F.3d at 318 & n.5 (although the plain language of 8 C.F.R. § 103.2(a)(2) "does not limit the duty to ensure that an application is 'true and correct' to material facts," the Fourth Circuit "read it to imply such a limitation"). "[F]inding that a misrepresentation is material does not require concluding that it necessarily would have changed the relevant decision.'" *Injeti*, 737 F.3d at 316. *Injeti* identifies two potentially applicable definitions of materiality under these circumstances. Under *Kungys v. United States*, 485 U.S. 759 (1988), a misrepresentation is material if it "ha[s] a natural tendency to influence the decision[] of [immigration officials]." *Id.* at 772 (assessing materiality in denaturalization context). "The BIA considers a misrepresentation material if it 'tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded.'" *Injetti*, 737 F.3d at 316-17 (citing *Matter of Kai Hing Hui*, 15 I. & N. Dec. 288, 289

(B.I.A. 1975)). The *Injeti* court declined to determine which of these two definitions applied because the plaintiff's misrepresentation satisfied both definitions in that case.

Here, the Court likewise finds that Kanu's omission of his children is material under either definition set forth in *Injeti*. Under the *Kungys* standard, Kanu's omission was material because it had a natural tendency to influence the decision of immigration officials. The Foreign Affairs Manual in effect at the time instructed consular officials that they "*must deny* the applications of registrants who list on their Form DS-230, Application for Immigrant Visa and Alien Registration, a spouse or child who was not included in their initial entry, unless such spouse or child was acquired subsequent to submission of qualifying DV entry." 9 Foreign Affairs Manual § 42.33 N6.6 (2008) (emphasis added). Moreover, the Federal Register's instructions for the 2009 diversity visa lottery stated that "[f]ailure to list all children [on the eDV] will result in your disqualification for the visa." *Registration for the Diversity Visa Immigrant (DV-2009) Visa Program*, 72 Fed. Reg. at 57091. Had immigration officials been in possession of all of the facts of Kanu's situation, they would have known not only that Kanu had at the time four children, but also that he had omitted his children from his eDV Form and DS-230 Application. Accordingly, knowledge of Kanu's children and his affirmative omissions of those children from his applications would have had the natural tendency to influence immigration officials' decision.

Kanu's omission of his children would have also been material under the BIA standard because it shut off a line of inquiry that was relevant to Kanu's eligibility. *See Injeti*, 737 F.3d at 317. It is critical for those applying to adjust their status to list family members. If, for instance, an applicant lists children that are not from a current marriage—especially when they live in a different location—then the immigration official would likely inquire into whether the applicant's current marriage is valid, whether the applicant has omitted a marriage or a spouse,

and whether the applicant has multiple simultaneous marriages, which would preclude admissibility. *See Injeti*, 737 F.3d at 317. Kanu's failure to list all of his children on his DS-230 Application shut off this relevant line of inquiry. Kanu's omissions were therefore material under either the *Kungys* or the BIA standard of materiality discussed in *Injeti*.

Kanu's arguments opposing summary judgment are unavailing. In his Opposition, Kanu argues that he "did not know that he was the father of any child or children . . . and therefore, he could not have provided the information when he was completing the eDV or at the DS 230 interview." Opp. at 5. Kanu also argues, contradictorily, that his response of "N/A" on the DS-230 application requiring him to list his children meant that "information about his children was 'not available' because some of his friends had told him that he could be the father of a child." *Id.* at 6. Kanu suggests that the Court cannot, at the summary judgment stage, make a credibility determination as to whether Kanu knew he had children, and there is therefore a genuine dispute of material fact precluding summary judgment. *Id.* at 6–7. But "[i]t is well established that a genuine issue of fact is not created where the only issue of fact is to determine which of two conflicting versions of a party's testimony is correct." *Erwin v. United States*, 591 F.3d 313, 325 n.7 (4th Cir. 2010) (cleaned up); *see also S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 273 n.12 (4th Cir. 1998) (a party's "later denial of her [earlier] statements does not create a genuine issue of a material fact"); *Kinser v. United Methodist Agency*, 613 F. App'x 209, 210 (4th Cir. 2015) (at summary judgment, "if an affidavit is inconsistent with the affiant's prior deposition testimony, courts may disregard the affidavit").

Here, as Defendants point out, Kanu has provided several explanations and versions of events throughout the course of his immigration proceedings as to why he omitted the children from his eDV Form. For instance, during his N-400 interview, Kanu testified that he did not

disclose his children on the eDV Form or DS-230 Application because he was not married at the time, "did not understand how the process work," and the Consular Officer "never asked" him about his children.  AR55. At that time, he did not state as a reason for these omissions that he was unaware of the children at the time he submitted those applications. Then, in his challenge to the N-400 decision, Kanu provided yet another explanation—in a signed, sworn supplemental declaration, he stated that "[t]here were rumors that he could be the father of a child or children, but those were only rumors and were not sufficient or persuasive enough for him to claim to be the biological father of any child or children at the DS-230 interview."  AR244.[5] Kanu also argues that his response of "N/A" to the question asking him to list his children on the DS-230 Application was intended to convey "not available" rather than "not applicable." *See* Compl. ¶ 13; Opp. at 6, Kanu's explanation for his definition of the term "N/A" is contradicted by the instructions on the DS-230, which direct applicants to "[m]ark questions that are *Not Applicable* with 'N/A.'" AR433 (emphasis added). "A genuine issue of material fact is not created where"— as here—"the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct." *Jessup v. Barnes Grp.*, 23 F.4th 360, 367 (4th Cir. 2022) (cleaned up). Kanu's multiple conflicting versions of events do not create a genuine issue of material fact precluding summary judgment here.

Accordingly, the Court finds that Kanu violated 8 C.F.R. § 103.2(a)(2) when certifying that his answers were "true and correct" when he, in fact, omitted his children from his DS-230

---

[5]      Even if Kanu had good reason to suspect he fathered his children but had not yet obtained proof (i.e., a DNA test) or otherwise definitively believed he was the father of his children, that would not excuse him from identifying his children on the relevant immigration forms. *See Ohene v. Zanotti*, 2022 WL 479771, at *5 (E.D. Va. Feb. 16, 2022) ("Petitioner's view that he has no responsibility to disclose his children until *he* obtains legal documentation providing as much is . . . a non-starter and would empower applicants to manipulate the immigration verification process to their liking and timing."); *cf. Yemer v. U.S. Citizenship & Immigr. Servs.*, 359 F. Supp. 3d 423, 433 (E.D. Va. 2019) ("[T]he context in which 'children' appears in Form DS-230 confirms that the ordinary meaning of 'children,' . . . applies to that form.  Specifically, Form DS-230 instructs applicants to 'List Names, Dates and Places of Birth, and Addresses of ALL Children.'  The emphasis on 'ALL' indicates that 'children' is to be interpreted broadly.").

Application. That misrepresentation was material to the immigration officers' decision-making process. Kanu therefore has not met the requirements for adjustment to LPR status under 8 U.S.C. § 1255, and he was not lawfully admitted for permanent residence.

**B.      Good Moral Character**

Defendants also argue as an independent basis for summary judgment that Kanu is ineligible for naturalization because he lacks good moral character. Because this Court has concluded that Kanu has not satisfied his burden of establishing that he was lawfully admitted for permanent residence, which is fatal to his application for naturalization, the Court need not address this issue. *Injeti*, 737 F.3d at 318 (holding that because "a failure to satisfy any one of the statutory prerequisites renders an applicant ineligible for naturalization," the conclusion that petitioner's acts barred a finding of good moral character "was not essential to the district court's grant of summary judgment").

**V.      CONCLUSION**

For the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment (Dkt. No. 29) in an Order to be issued with this Memorandum Opinion.

/s/
_____
Hon. Michael S. Nachmanoff
United States District Judge

Alexandria, Virginia
May 9, 2023